NOT FOR  PUBLICATION                                                            [16]___

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

————————————————————
FRANK A. BRIGLIA,                                :
                                                           :        Civil Action No. 03-6033 (FLW)
                         Plaintiff,               :
                                                           :
                         v.                         :               **OPINION**
                                                           :
HORIZON HEALTHCARE SERVICES,    :
INC, d/b/a HORIZON BLUE CROSS/       :
BLUE SHIELD OF NEW JERSEY,            :
ET AL.,                                              :
                         Defendants.          :
————————————————————     :

**APPEARANCES:**

For Plaintiff:
FRANK P. SPADA, JR., ESQ.  AND IAN W. SIMINOFF, ESQ.
PEPPER HAMILTON LLP
300 ALEXANDER PARK
CN 5276
PRINCETON, NJ 08543-5276

For Defendants/Counterclaimants Horizon Healthcare Services and Horizon NJ Health:
EDWARD S. WARDELL, ESQ.
KELLEY, WARDELL & CRAIG, ESQS.
41 GROVE STREET
HADDONFIELD, NJ 08033

**WOLFSON, United States District Judge**

This matter comes before the Court upon the motion to dismiss, or in the alternative, for

summary judgment filed by Defendants Horizon Healthcare Services d/b/a Horizon Blue

Cross/Blue Shield of New Jersey ("Horizon") and Horizon Mercy New Jersey ("Horizon NJ

Health")(Collectively "Horizon Defendants") in connection with certain health care benefits

1

which Plaintiff claims have wrongfully been denied by Defendants.  Plaintiff Dr. Frank Briglia

("Plaintiff" or "Dr. Briglia") is a Board Certified pediatric care physician who alleges that

Defendants have wrongfully refused to pay and reimburse him for treatment that he provided to

seven patients pursuant to health care plans either administered or sponsored by Defendants.  He

is suing Horizon for denial of benefits and breach of fiduciary duty and is suing Horizon NJ

Health for breach of contract.  Plaintiff is also suing both Horizon Defendants pursuant to

N.J.S.A. § 17B:27-44.2, the New Jersey Prompt Payment Statute.  Several issues are before the

Court.  First, the Court must decide whether an anti-assignment provision found in one of the

applicable benefit plans bars an alleged assignment to Plaintiff.  Second, the Court must decide

whether Horizon, when acting as a third-party administrator, is a fiduciary under the Employee

Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq.  Finally, the Court must

decide whether N.J.S.A. § 17B:27-44.2, the New Jersey Prompt Payment Statute, applies here.

For the reasons set forth below, the Court grants Horizon Defendants' motion in its entirety.

## I.     BACKGROUND

Dr. Briglia is a Board Certified pediatric care physician who treats patients with special

needs and those who are ventilator-dependant.  Compl. ¶ 9.  He alleges that he provided medical

care to patients L.D., P.K., D.H., D.J., S.S., E.T. and D.T. Id. ¶ 12.[1]

Horizon is a health services corporation that provides health care benefits in New Jersey.

It provided insured benefits for L.D. pursuant to an employee group health plan established by

her parent's employer, Sancoa International.  Id. ¶ 12; Group Application to Horizon by Sancoa,

---

[1]Patients E.T. and D.T. are not implicated in Counts II and IV of Plaintiff's Complaint, which allege ERISA claims against Horizon.  As a result, only Plaintiff's patients L.D., P.K., D.H., D.J. and S.S. are relevant for the purposes of the discussion of these counts.

International.  Horizon also acted as third-party administrator for three self-insured employee benefit plans: the N.J. Bricklayers and Allied Craftsman Health and Welfare Fund ("B.A.C. Fund"), the plan sponsored by J&J Snack Foods ("J&J Plan") and the plan sponsored by the Strober Organization ("Strober Plan").[2]  Am. Compl.  ¶¶ 35, 42, 49.

The B.A.C. Fund, which is administered by Horizon, provided benefits to Plaintiff's patients P.K. and D.H.   Am. Compl. ¶ 14.  The J&J Plan and the Strober Plan, also both administered by Horizon, provided benefits to patients D.J. and S.S., respectively.  Id.  Defendant Horizon NJ Health, which is a Medicaid benefit provider in New Jersey, provided benefits to E.T. and D.T. and secondary benefits to D.H. and P.K.  Id.

Plaintiff alleges that in June of 2001, he entered into a negotiated Agreement with Horizon NJ Health "whereby Dr. Briglia committed to provide medically necessary services in his area of expertise for the [Horizon NJ Health] insureds and [Horizon NJ Health] agreed to compensate Dr. Briglia pursuant to a set fee schedule that was contained in the negotiated Agreement" and that Horizon NJ Health subsequently breached the agreement by refusing to reimburse Plaintiff.  Compl. ¶¶ 19-22.  Dr. Briglia also alleges that Horizon NJ Health has "contacted other carriers and insurance plans, including [Horizon] to persuade them to stop payment to Dr. Briglia."  Id. ¶ 22.

According to Plaintiff, Horizon "has failed and refused to pay Dr. Briglia's bills for services provided under the aforesaid health insurance policies, such refusal being arbitrary and capricious and in bad faith. Further, after certain appeals and claims reviews have been

---

[2]In Plaintiff's Amended Complaint, he adds the J&J Snack Foods Corporation and the Strober Organization, Inc. as defendants.

performed by [Horizon] representatives pursuant to [Horizon] policies, claims and payments have been approved and checks processed, only to be arbitrarily withheld through the intervention of other [Horizon] managers without legitimate basis and in bad faith."  Id. ¶ 27; Am Compl. ¶ 29.

Plaintiff further alleges that the B.A.C. Fund approved and paid claims for services provided by Dr. Briglia when Ullicare was the B.A.C. Fund's third-party administrator. Id. ¶¶ 32-33.  However, the B.A..C. Fund switched from Ullicare to Horizon as its third-party administrator, and "[a]fter the switch, and despite assurances verbally and in writing from the B.A.C. Fund office that the same benefits would be administered by the new carrier, the B.A.C. Fund has arbitrarily and capriciously refused to pay claims forwarded for Dr. Briglia's services." Id.  Plaintiff alleges that Horizon "provides review and advice on the payment of claims submitted to the B.A.C. Fund," Am Compl. ¶ 56, and that the B.A.C. Fund's refusal to pay "is based upon [Horizon's] instruction." Compl. ¶ 38.

Plaintiff also alleges that Horizon "provides review and advice on the payment of claims submitted to ... the self-insured plans of J&J and Strober," Am Compl. ¶ 56.  Moreover, he allages that "[t]he J&J insurance plan and/or Horizon BC/BS has arbitrarily and capriciously refused to pay claims forwarded" for Dr. Briglia's treatment of D.J., Am Compl. ¶¶ 44-46, and that "[t]he Strober insurance plan and/or Horizon BC/BS has arbitrarily and capriciously refused to pay claims forwarded" for Dr. Briglia's treatment of S.S.  Id. ¶¶ 51-53.

According to Plaintiff, all of his aforementioned patients except E.T. and D.T. have "unconditionally requested and required that Dr. Briglia maintain his position as their specialist, and that his plan of care would be overly disrupted if Defendants required them to change to

4

another specialist" and these patients have "assigned all of their rights, benefits and causes of action to which they, their spouses and children, as the case may be, are entitled from and against Defendants to Plaintiff, Dr. Briglia, with respect to all medical treatment provided by Dr. Briglia to, for and/or on behalf of the aforementioned patients."[3]  Id. ¶ 13, 16.

On December 19, 2003, Plaintiff filed a Complaint against Horizon, Horizon NJ Health, the B.A.C. Fund and Gary J. Mercadante, the B.A.C. Fund's plan administrator.  On January 20, 2004, Horizon Defendants filed their Answer, raising affirmative defenses and bringing counterclaims against Plaintiff.  On January 28, 2004, Horizon Defendants filed an Amended Answer, also raising affirmative defenses and asserting counterclaims against Plaintiff.  On November 3, 2004, Horizon Defendants filed the instant motion to dismiss.  On April 21, 2005, Plaintiff filed an Amended Complaint, adding J&J Snack Foods Corporation and the Strober Organization, Inc. as defendants.

## II.    DISCUSSION

### A.  Standard

Defendants have framed their motion as a motion to dismiss under Rule 12(b)(6), or, in the alternative, for summary judgment under Rule 56.  In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts as true all allegations in the Plaintiff's Complaint and all reasonable inferences that can be drawn therefrom after construing them in the light most favorable to the non-movant.  Jordan v. Fox, Rothschild,

---

[3]While Plaintiff filed an amended complaint on April 21, 2005, the assignments here were executed in January 2004--subsequent to the filing of the original complaint in December 2003, in which Plaintiff alleges that he is the assignee of the rights of five patients.  For the purposes of this motion, however, Defendants waive any argument that Plaintiff lacked standing to assert claims based upon the assignment at the time that the original complaint was filed.

O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir.1994). A pleading may be dismissed for "failure to state a claim where it appears beyond doubt that no relief could be granted under any set of facts which could be proved consistent with the allegations." Hedenburg v. Bando American, Inc., 1992 WL 443432, at *4 (D.N.J. Mar.3, 1992) (citing Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). Courts are required when conducting the 12(b)(6) inquiry to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party. In re Rockefeller Ctr. Prop., Inc. Sec. Litig., 311 F.3d 198, 215 (3d Cir.2002). Nevertheless, legal conclusions offered in the guise of factual allegations are given no presumption of truthfulness. Chugh v. Western Inventory Services, Inc.,333 F.Supp.2d 285, 289 (D.N.J. 2004)(citing Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). Therefore, in ruling on a Rule 12(b)(6) motion, courts can and should reject "legal conclusions," "unsupported conclusions," "unwarranted references," "unwarranted deductions," "footless conclusions of law," and "sweeping legal conclusions in the form of actual allegations." Morse v. Lower Merion School Dist., 132 F.3d 902,  907, n.8 (3d Cir.1997).

On a motion to dismiss, the Court generally does not consider documents extraneous to the pleadings, but the Court may consider a "document integral or explicitly relied upon in the complaint ... without converting the motion to dismiss into one for summary judgment." In re Burlington Coat Factory Secs. Litig. 114 F.3d 1410, 1426 (3d Cir. 1997). Here, Plaintiff's claims are entirely based on the benefit plans referenced in the Complaint.   Thus, the Court may consider the plan documents, which are included in Defendants' motion, without converting this Rule 12(b)(6) motion into a motion for summary judgment. Carducci v. Aetna U.S. Healthcare,

247 F.Supp.2d 596, 609 (D.N.J. 2003).

**B. Plaintiff's Claims Against Horizon Defendants**

**1) <u>Counts II and IV of the Original Complaint</u> [4]**

In Count II of his Complaint, Plaintiff asserts a claim against Horizon for wrongful denial of benefits in connection with his treatment of L.D., P.K., D.H., D.J. and S.S.  While Count II does not mention a specific statute pursuant to which Plaintiff is bringing his claim, Plaintiff is clearly asserting his denial of benefits claim pursuant to Section 502(a)(1)(B) of ERISA.  <u>See</u> 29 U.S.C. § 1132(a)(1)(B).  In Count IV of his Complaint, Plaintiff asserts a claim against Horizon for a breach of fiduciary duty under ERISA, pursuant to 29 U.S.C. § 1104.

ERISA's enforcement provision is found at 29 U.S.C. § 1132(a)(1), which provides, that "[a] civil action may be brought ... by a participant or beneficiary ... to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a).  By its terms, standing under the statute is limited to beneficiaries and participants, and Plaintiff  is neither a beneficiary nor a participant.  However, Plaintiff alleges that five of his patients assigned to him their rights to recover benefits and that therefore, he may bring a claim to recover benefits pursuant to § 502(a)(1)(B).

It remains unclear under the law of this Circuit, whether Plaintiff can obtain standing to sue under § 502(a) by virtue of an assignment of a claim from a beneficiary.  Almost every circuit to have considered the question has held that a health care provider can assert a claim under § 502(a) where a beneficiary or participant has assigned to the provider that individual's

---

[4]<u>See</u> footnote 1, <u>supra</u>.

right to benefits under the plan. <u>See, e.g.</u>, <u>Tango Transport v. Healthcare Fin. Servs.</u>, 322 F.3d 888, 891 (5th. Cir. 2003) (collecting cases).  However, faced with an opportunity to rule on this issue of § 502(a) standing in <u>Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan</u>, 388 F.3d 393 (3d Cir. 2004) the Third Circuit expressed "no opinion" on the specific question and decided the case on other grounds because it found that no assignment had taken place. <u>Pascack Valley</u>, 388 F.3d at 401.  Likewise, for the purposes of this motion, that question need not be answered.

    **a) Plaintiff's Claims Associated with His Treatment of L.D.**

Horizon provided insured benefits for L.D. pursuant to an employee group health plan established by L.D.'s parent's employer, Sancoa International.  <u>Id.</u> ¶ 12; Group Application to Horizon by Sancoa, International.  While Plaintiff is asserting a denial of benefits claim against Horizon as L.D.'s assignee, Horizon argues that any assignment to Plaintiff was invalid because the terms of the benefit plan at issue forbade the assignment.  Therefore, the Court must determine whether an alleged assignee can sue for denial of benefits pursuant to ERISA section 502(a)(1)(B), where the applicable benefit plan has an anti-assignment clause.

Although the Third Circuit has not addressed the issue of anti-assignability clauses, a number of federal and state courts have found that unambiguous anti-assignment provisions in group health care plans are valid.  <u>See, e.g.</u>, <u>Physicians Multispecialty Group v. Health Care Plan of Horton Homes, Inc.</u>, 371 F.3d 1291, 1294-96 (11th Cir. 2004)("Because ERISA-governed plans are contracts, the parties are free to bargain for certain provisions in the plan--like assignability.  Thus, an unambiguous anti-assignment provision in an ERISA-governed welfare benefit plan is valid and enforceable."); <u>City of Hope Nat'l Med. Ctr. v. Healthplus, Inc.</u>, 156

F.3d 223, 229 (1st Cir. 1998) ( "Consistent with the other circuits which have addressed this issue, we hold that ERISA leaves the assignability or non-assignability of health care benefits under ERISA-regulated welfare plans to the negotiations of the contracting parties."); St. Francis Reg'l Med. Ctr. v. Blue Cross & Blue Shield of Kan., Inc., 49 F.3d 1460, 1464-65 (10th Cir. 1995) ("ERISA's silence on the issue of the assignability of insurance benefits leaves the matter to the agreement of the contracting parties."); Davidowitz v. Delta Dental Plan of Cal., Inc., 946 F.2d 1476, 1478 (9th Cir.1991) ("As a general rule of law, where the parties' intent is clear, courts will enforce non-assignment provisions."); Washington Hosp. Ctr. Corp. v. Group Hospitalization and Med. Servs., Inc., 758 F.Supp. 750, 755 (D.D.C.1991) (holding that an anti-assignment provision was valid and enforceable after concluding that enforcement of the provision was not contrary to public policy); Renfrew Center v. Blue Cross and Blue Shield of Central New York, Inc., 1997 WL 204309, *3 (N.D.N.Y. 1997)("anti-assignment clauses play an important role in constraining the costs of health care"); Somerset Orthopedic Assocs. v. Horizon Blue Cross and Blue Cross and Blue Shield of New Jersey, 785 A.2d 457, 465 (N.J. App. Div. 2001)(finding that "such subscriber assignment are void as contrary to public policy" and holding that "the anti-assignment clause in Horizon's subscriber contracts is valid and enforceable to prevent assignment by subscribers of policy benefit payments to non-participating medical providers without Horizon's consent").  This Court finds the caselaw supporting the enforceability of anti-assignment provisions in health benefit plans persuasive.

According to Section 15 of the benefit plan governing Horizon's provision of insured benefits for L.D.: "Covered Persons may not assign any rights to coverage or benefits under this Policy without Horizon BCBSNJ's advance written consent.  However, Horizon BCBSNJ may

determine to pay Covered Charges directly to Providers for their Covered Services and Supplies; and any such direct payment shall be treated as though paid directly to Covered Persons to satisfy Horizon BCBSNJ's obligations under this policy.  In addition, Horizon BCBSNJ may assign or transfer its rights or obligations or any of them under this policy."  Benefit Plan at 98; Ex. A.

      The Court finds this anti-assignment provision to be unambiguous.  Furthermore, there is no allegation that the patient L.D. obtained advanced written consent for the assignment given to Dr. Briglia.  Thus, I find that the benefit plan disallowed any assignment from L.D. to Plaintiff and that, therefore, the assignment from L.D. to Plaintiff is invalid.  As a result, Plaintiff's claims for denial of benefits and breach of fiduciary duty against Horizon associated with his claim for reimbursement on behalf of L.D. are dismissed.

### b) Plaintiff's Claims Associated with His Treatment of P.K., D.H., D.J. and S.S.

      Horizon next argues that this Court must dismiss the remainder of the claims in Count II of the Complaint, which concern reimbursement for treatment provided to P.K., D.H., D.J. and S.S., because Horizon is not the proper defendant.   First, Horizon argues that only employee benefit plans are proper defendants in actions brought under section 502(a)(1)(B).  Defs.' Moving Br. at 6.  Horizon also argues that the Court need not even address this issue, however, which has generated a split among courts, "because there is no decision or authority anywhere that suggests the third party claims administrator of a self-insured plan is a proper party defendant under Section 502(a) or is responsible for the payment of any benefit under Section 502(d)."  Defs.' Reply Br. at 4.

      While the Third Circuit has not determined whether a plaintiff may bring suit against a third party plan administrator under section 502(a)(1)(B), in <u>Curcio v. John Hancock Mutual Life</u>

Ins. Co, 33 F.3d 226, 233 (3d Cir. 1994), it considered whether a plaintiff could bring suit under

section 502(a)(3)(B)'s equitable relief provision against a party other than the plan, and

concluded that the plaintiff could proceed against a plan administrator who is also a fiduciary.

There is no reason to believe that the Third Circuit would distinguish between these subsections

of Section 502(a).  Moreover, district courts in this Circuit have interpreted Curcio as holding

that a fiduciary can be sued under 502(a)(1)(B).   See Foley v. International Broth. of Electrical

Workers Local Union 98 Pension Fund, 91 F.Supp.2d 797, 803 (E.D. Pa 2000) ("Curcio holds

that fiduciaries of the plan can be held liable for recovery of benefits under an ERISA plan.");

Vaughn v. Metropolitan Life Ins. Co., 87 F.Supp.2d 421, 425 (E.D. Pa. 2000) (" I read Curcio to

hold that a fiduciary or plan administrator may be sued for recovery of benefits under §

1132(a)(1)(B)."); Welch v. CoreStates Financial Corp., 1999 WL 387276, *4 (E.D. Pa.

1999)(citing Curcio for the proposition that "the proper defendants in an action to recover

benefits under § 1132(a)(1)(B) of ERISA are the plan itself and any fiduciaries thereof");

Edwards v. Continental Airline,1999 WL 95719, *1(E.D. Pa.1999)(citing Curcio for the

proposition that a "plaintiff may have a cause of action under § 502(a)(1)(B) against an ERISA

plan or plan administrator or a fiduciary of a plan"); In re Blue Cross of Western Pennsylvania

Litigation, 942 F.Supp. 1061, 1065 (W.D. Pa. 1996) (citing Curcio for the proposition that a

"claim for benefits may be made in a civil action against a party found to be a fiduciary under

ERISA").  This Court agrees, and I find that Plaintiff may bring a 502(a)(1)(B) claim against a

third-party plan administrator of a self funded plan, but only if the third-party administrator  is a

fiduciary.

Regarding fiduciaries, ERISA provides:

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A).

According to the Third Circuit, "the linchpin of fiduciary status under ERISA is discretion." Curcio, 33 F.3d at 233. To determine Horizon's level of discretion, the Court must resolve whether Horizon "maintained any authority or control over the management of the plan's assets, management of the plan in general, or maintained any responsibility over the administration of the plan." Id. If such is the case, Horizon may be considered a fiduciary, and therefore, an appropriate defendant. See id.

On the other hand, "persons who perform purely ministerial tasks, such as claims processing and calculation, cannot be fiduciaries because they do not have discretionary roles." Confer v. Custom Engineering Co., 952 F.2d 34, 39 (3d Cir. 1991). Other circuits have also held that third-party administrators who perform merely administrative duties are not fiduciaries under ERISA. See Milofsky v. American Airlines, Inc., 2005 WL 605754, *2 (5th Cir. 2005) (plaintiffs' allegations that defendant third-party administrator acted as a fiduciary while performing services that the court deemed administrative or ministerial were insufficient to allow the claim to survive a 12(b)(6) motion to dismiss); Reich v. Lancaster, 55 F.3d 1034, 1049 (5th Cir. 1995)(recognizing that persons who carry out perfunctory and ministerial, albeit important, duties and responsibilities for a plan are not fiduciaries: "[t]o be fiduciaries, such persons must

12

exercise discretionary authority and control that amounts to actual decision making power");

Kyle Railways, Inc. v. Pacific Administration Servs. Inc., 990 F.2d 513, 516 (9th Cir.

1993)(third-party plan administrator who processed claims was not fiduciary where its functions

were merely ministerial and relevant agreement required that employer make final decision

concerning all discretionary questions); Baxter v. C.A. Muer Corp., 941 F.2d 451, 455 (6th Cir.

1991) (plan administrator who merely processed and paid claims in accordance with terms of

plan was not fiduciary); Baker v. Big Star Division, 893 F.2d 288, 290 and n. 2 (11th Cir. 1990)

("An insurance company does not become an ERISA 'fiduciary' simply by performing

administrative functions and claims processing within framework of rules established by

employer."); Gelardi v. Pertec Computer Corp., 761 F.2d 1323, 1325 (9th Cir. 1985) (insurance

company hired by employer to administer ERISA plan not a fiduciary when it "performs only

administrative functions, processing claims within a framework of policies, rules and procedures

established by others").  Therefore, if the Court finds under the pleadings and referenced plan

documents that Horizon, as third-party administrator, undertook only administrative and

ministerial tasks, Horizon is not a fiduciary and, thus, is not a proper defendant.

Having already addressed the claims relating to Plaintiff's treatment of L.D., the Court

must now look at Horizon's role regarding the remaining patients at issue: P.K., D.H., D.J. and

S.S.  The patients, P.K. and D.H., received benefits pursuant to the B.A.C. Fund, a self-insured

plan.  D.J. received benefits pursuant to the self-insured J&J Plan, and S.S. received benefits

pursuant to the self-insured Strober Plan.  Horizon acted as third-party administrator for all of

three of these self-insured plans.  Therefore, the Administrative Services Agreements between

Horizon and these self-insured plans are the most logical starting point of the analysis to

13

determine whether Horizon is a fiduciary with respect to these plans.

Under the terms of the Administrative Services Agreement between Horizon and the B.A.C. Fund ("B.A.C. Fund Agreement"), Horizon agreed to administer the benefits of the self-insured ERISA plan, and "pay Claims for, the benefits detailed in Your ERISA Plan Document in accordance with such document."  B.A.C. Fund Agreement at 1, 7; Defs.' Ex. B.  According to Section 4 of the B.A.C. Fund Agreement, which is entitled "Responsibility," the B.A.C. Fund is "solely responsible for complying with all applicable provisions of [ERISA].  This includes the fiduciary responsibilities of structuring the benefit Program, maintaining adequate funding to support the Program and making all final Claims decisions."  Id. at 4 (emphasis added).  The Agreement also provides that "[f]or the purposes of th ERISA, and any applicable similar state legislation, [the B.A.C. Fund] shall ... be deemed the Administrator of [the B.A.C.] Program." Id. at 5.

Under the terms of the Administrative Services Agreement between Horizon and the J&J Plan ("J&J Plan Agreement"), Horizon agreed to administer the benefits of the self-insured ERISA plan "in accordance with the ERISA plan document which [J&J] received from Horizon."  J&J Plan Agreement § 1.00; Defs.' Ex. C.  According to Section 4 of the J&J Plan Agreement, which is entitled "Responsibility," J&J "will be solely responsible for complying with all applicable provisions of [ERISA].  This includes the fiduciary responsibilities of structuring the benefit Program, maintaining adequate funding to support the Program and making all final claims decisions."  Id. at § 4.00(emphasis added).  J&J "delegate[s] to [Horizon] authority to make initial Claims determinations on [J&J's] behalf with respect to benefits under [J&J's] Program.  For the purposes of the ERISA, and any applicable similar state legislation,

14

[J&J] shall, however, be deemed the Administrator of [J&J's] Program." Id. at § 4.01.  Horizon

"shall not be liable for any mistake of judgment or other action taken in good faith, or for any

loss unless resulting from [its] gross negligence or, while it is not [Horizon's] intention to be a

fiduciary, failure to meet any fiduciary responsibilities which may be imposed on [Horizon] with

respect to claim review or benefit determination under ERISA."  Section 6 of the Agreement

provides that "the responsibility for all final claims decisions remains with [J&J]." Id. at § 6.00.

Under the terms of the Administrative Services Agreement between Horizon and the

Strober Plan ("Strober Plan Agreement"), Horizon agreed to administer the benefits of the self-

insured ERISA plan "in accordance with the ERISA plan document which [Strober] furnished

Horizon."  Strober Plan Agreement § 1.00; Defs.' Ex. C.  According to Section 4 of the Strober

Plan Agreement, which is entitled "Responsibility," Strober "will be solely responsible for

complying with all applicable provisions of [ERISA.  This includes the fiduciary responsibilities

of structuring the benefit Program, maintaining   adequate funding to support the Program and

making all final claims decisions." Id. at § 4.00(emphasis added).  Strober "delegate[s] to

[Horizon] authority to make initial Claims determinations on [Strober's] behalf with respect to

benefits under [Strober's] Program. ...  For the purposes of the ERISA, and any applicable similar

state legislation, [Strober] shall, however, be deemed the Administrator of [Strober's] Program."

Id. at § 4.01.

While the terms of these three agreements make clear that neither the plan sponsors nor

Horizon intended that Horizon become a fiduciary or undertake fiduciary duties and

responsibilities, Plaintiff nonetheless alleges that Horizon is a fiduciary.  With respect to the

B.A.C. Fund, Plaintiff alleges in the most general fashion that Horizon is a fiduciary "by reason

of [its] possession, authority and control respecting the administration of the B.A.C. Fund and the management and proper disposition of benefit claims submitted to the B.A.C. Fund for payment." Compl. ¶ 41. Plaintiff further alleges that "Horizon is a fiduciary with respect to the self-insured plans of J&J and Strober by reason of their possession, authority and control respecting the administration of the self-insured plans of J&J and Strober and the management and proper disposition of benefit claims submitted to the self-insured plans of J&J and Strober." Am Compl. ¶ 58.

Notwithstanding these allegations and Plaintiff's allegation that Horizon "provides review and advice on the payment of claims submitted to the B.A.C. Fund and the self-insured plans of J&J and Strober," Am Compl. ¶ 56, in actuality, Plaintiff has alleged no more than that Horizon made initial claims decisions which the plans then reviewed and acted upon. There is no explication of Horizon exercising any discretion, authority or control associated with its administration of any of the plans. Plaintiff's lone argument having to do with the BA.C. Fund and patients P.K. and D.H. is, in essence, that Horizon must have exercised more discretion and control than that of a mere claims processor for the sole reason that the previous third-party administrator, Ullicare, paid Plaintiff's claims, whereas the payments ceased when the B.A.C. Fund switched to Horizon as third-party administrator. This argument is unavailing because it illustrates only that Horizon did that which it was hired to do: make initial claims decisions by processing claims, an act which does not give rise to fiduciary status. The fact that the B.A.C. Fund, which makes the final decision, see B.A.C. Fund Agreement at 4, agreed with or acted upon that decision does not elevate Horizon's role to a fiduciary.

The cases to which Plaintiff cites are also inapposite. Two of the cases involved plan

16

administrators, as opposed to a third-party administrator, as is the case here.  In Timmons v.

Special Ins. Services, 984 F.Supp. 997, 1000 (E.D. Tex. 1997), the court found that the plan

administrator was a fiduciary because it was authorized, inter alia, "to do all it deem[ed]

necessary or convenient to carry out the terms and purposes of the P[lan]."  In Eaton v. D'Amato,

581 F.Supp. 743, 746-47 (D.D.C. 1980), the court found that a plan administrator was "a

fiduciary in regard to certain activities" because it "adjudicated varied and substantial medical

claims for reimbursement in which its judgment as to what charges or amounts were "fair,"

"reasonable" or "customary" was in effect final. It made critical decisions concerning

management of the dental treatment plan. It effectively supervised the establishment of

recordkeeping systems used in administering the various benefit plans, and took some initiative

regarding subsequent conversion to more sophisticated data processing equipment. In each

instance, [the plan administrator] apparently possessed broad latitude in making awards, setting

priorities, and performing other administrative tasks. Further,  [the plan administrator] evidently

selected the banks and types of accounts to be used for monies deposited in the name of the Trust

Funds. Its officials often helped shape the agenda of trustee meetings."

       Finally, plaintiff cites to Harold Ives Trucking Co. v. Spradley & Coker, Inc.,178 F.3d

523, 526 (8th Cir. 1999), a case in which the court ruled that an "administration contract [that]

provide[d] expressly that [the defendant] would have no discretionary authority as third-party

administrator, and that it would provide only ministerial services ... is controlling only to the

extent that [the defendant third-party administrator] actually carried out its responsibilities in a

manner consistent with its provisions ... [and] performed only ministerial duties."  In Harold Ives

Trucking Co., the court found that the defendant third-party administrator assumed discretionary

17

authority and acted as a fiduciary when it reversed its original decision that a plan participant's hospitalization would not be covered by the plan, without consulting the plaintiff employer or plaintiff employee benefit plan, and in the face of the plan's excess loss carrier's "adamant" view that the charges would not be covered.  178 F.3d at 526.  In contrast, here, the Court finds that Plaintiff has not sufficiently alleged that Horizon assumed any discretionary authority or acted outside the express limitations of the plan documents which gave all final decision-making to the plan.  Granting all inferences to Plaintiff in this motion to dismiss, the Court finds nonetheless that Horizon is not a fiduciary according to 29 U.S.C. § 1002(21)(A) and Horizon is not a proper defendant under ERISA section 502(a)(1)(B) regarding patients P.K., D.H., D.J. and S.S.

As a result of this determination and the Court's finding that the assignment from patient L.D. to Plaintiff was invalid, <u>supra</u> section B(1)(a), all of Plaintiff's claims against Horizon pursuant to section 502(a)(1)(B), which are found in Count II of the original Complaint and Amended Complaint, are dismissed.  Furthermore, Plaintiff's claims against Horizon for "Breach of Fiduciary Duty," which are found in Count IV of the original Complaint and Count VI of the Amended Complaint, are also dismissed because of the finding that Horizon is not a fiduciary under ERISA.[5]

### 2) Count V of the Original Complaint (N.J.S.A. § 17B:27-44.2)

In Count V of the original Complaint and Count VII of the Amended Complaint, Plaintiff

---

[5]Count IV Plaintiff's original Complaint alleges only that Horizon is a fiduciary with regard to the B.A.C. Fund.  Compl. ¶ 41.  Count VI of the Amended Complaint alleges only that Horizon is a fiduciary with regard to the B.A.C. Fund, J&J Plan and Strober Plan.  Am. Compl. ¶¶ 57-58.  Neither the Complaint nor Amended Complaint alleges that Horizon breached a fiduciary duty it owed as a result of providing insured benefits to L.D.

asserts a claim against all Defendants on his own behalf and as assignee pursuant to the New

Jersey Prompt Payment Statute, N.J.S.A. § 17B:27-44.2 ("Prompt Pay Statute").  The Prompt

Pay Statute provides in relevant part:

> d. (1) Effective 180 days after the effective date of P.L.1999, c. 154, a health insurer or its agent, hereinafter the payer, shall remit payment for every insured claim submitted by an insured or that insured's agent or assignee if the policy provides for assignment of benefits, no later than the 30th calendar day following receipt of the claim by the payer or no later than the time limit established for the payment of claims in the Medicare program pursuant to 42 U.S.C.s.1395u(c)(2)(B), whichever is earlier, if the claim is submitted by electronic means, and no later than the 40th calendar day following receipt if the claim is submitted by other than electronic means, if:
>
> (a) the claim is an eligible claim for a health care service provided by an eligible health care provider to a covered person under the policy;
> (b) the claim has no material defect or impropriety, including, but not limited to, any lack of required substantiating documentation or incorrect coding;
> (c) there is no dispute regarding the amount claimed;
> (d) the payer has no reason to believe that the claim has been submitted fraudulently; and
> (e) the claim requires no special treatment that prevents timely payments from being made on the claim under the terms of the policy.
>
>
> (2) If all or a portion of the claim is denied by the payer because:
>
> (a) the claim is an ineligible claim;
> (b) the claim submission is incomplete because the required substantiating documentation has not been submitted to the payer;
> (c) the diagnosis coding, procedure coding, or any other required information to be submitted with the claim is incorrect;
> (d) the payer disputes the amount claimed;
>
> (e) the claim requires special treatment that prevents timely payments from being made on the claim under the terms of the policy, the payer shall notify the insured, or that insured's agent or assignee if the policy provides for assignment of benefits, in writing or by electronic means, as appropriate, within 30 days, of the following: if all or a portion of the claim is denied, all the reasons for the denial; if the claim lacks the required substantiating documentation, including incorrect coding, a statement as to what substantiating documentation or other information

19

is required to complete adjudication of the claim; if the amount of the claim is disputed, a statement that it is disputed; and if the claim requires special treatment that prevents timely payments from being made, a statement of the special treatment to which the claim is subject.
N.J.S.A. § 17B:27-44.2(d)(1)-(2)

Defendants argue that the Prompt Pay Statute does not provide health care providers with an independent cause of action or require the payment of any claim. Rather, they argue, the statute addresses the rate of interest applicable to certain claims submitted under group policies. Defs.' Br. at 10. In his Opposition, Plaintiff argues that the claim should not be dismissed because Defendants cite no caselaw supporting the proposition that the Prompt Pay Statute does not provide an independent cause of action. Pl.'s Opp. Br. at 9. The Court finds, however, that the Prompt Pay Statute is inapplicable here by virtue of its own terms.

Section (d)(1) states that it applies where "the claim is an eligible claim for a health care service provided by an eligible health care provider to a covered person under the policy," where "there is no dispute regarding the amount claimed" and where "the payer has no reason to believe that the claim has been submitted fraudulently." N.J.S.A. § 17B:27-44.2(d)(1). Here, the basis of Plaintiff's complaint is the parties' dispute over the eligibility and value of Plaintiff's claims and Defendants' refusal to pay and reimburse Plaintiff as a result of the dispute. See Compl. ¶¶ 14, 17. Moreover, Horizon and Horizon NJ Health allege in their Amended Answer that their refusal to pay and reimburse Plaintiff is based upon their belief that Plaintiff "submitted false and fraudulent bills." Am. Answer ¶ 14. Therefore, because Defendants denied Plaintiff's claims, and eligibility, amount due and fraud are all at issue, Section (d)(1) of the Prompt Pay Statute is not applicable here, and instead, Section (d)(2), which addresses denied claims, applies.

20

According to Section (d)(2) of the statute: "If all or a portion of the claim is denied by the payer because ... the claim is an ineligible claim or the payer disputes the amount claimed ... the payer shall notify the insured, or that insured's ... assignee if the policy provides for assignment of benefits, in writing or by electronic means, as appropriate, within 30 days, of the following: if all or a portion of the claim is denied, all the reasons for the denial; ... if the amount of the claim is disputed, a statement that it is disputed."  Plaintiff has not alleged in his original or amended complaint that Defendants did not provide him with the notification required by Section (d)(2) of the Prompt Pay Statute.  Therefore, Plaintiff's claims against Horizon and Horizon NJ Health pursuant to the New Jersey Prompt Payment Statute, N.J.S.A. § 17B:27-44.2 are dismissed.

### 3) Count V of the Original Complaint (New Jersey Consumer Fraud Act)

Plaintiff agrees with Horizon Defendants that his claims against Horizon and Horizon NJ Health pursuant to the New Jersey Consumer Fraud Act cannot survive a motion to dismiss. Pl.'s Opp. Br. at 1.  Therefore, they are dismissed.

### 4) Count I of the Original Complaint (Breach of Contract)

In their moving papers, Horizon Defendants ask this Court to decline to exercise supplemental jurisdiction over Plaintiff's state law breach of contract claim against Horizon NJ Health pursuant to 28 U.S.C. § 1367(c)(3).  The decision to exercise supplemental jurisdiction is committed to the discretion of the district court.  Stehney v. Perry, 101 F.3d 925, 939 (3d Cir. 1996)(citing Growth Horizons, Inc. v. Delaware County, Pa., 983 F.2d 1277, 1284-85 (3d Cir. 1993)).  Here, even after this Court decides the instant motion, Plaintiff will still have federal claims remaining against Defendants Gary J. Mercadante, N.J. Bricklayers and Allied Craftsman

Health and Welfare Fund, J&J Snack Foods Corporation and the Strober Organization, Inc. Therefore, because Plaintiff's breach of contract claim against Horizon NJ Health involves issues intertwined with those existing in his claims remaining against the other defendants, this Court, in its discretion and in the interest of judicial economy, shall continue to exercise supplemental jurisdiction over Plaintiff's breach of contract claim against Horizon NJ Health.

## III.  CONCLUSION

For the reasons stated above, Horizon Defendants' motion to dismiss Counts II, IV, V(a) and V(b) is granted.  Specifically, Plaintiff's claims against Horizon for the recovery benefits under § 1132(a)(1)(B) of ERISA and for breach of fiduciary duties under ERISA are dismissed. Plaintiff's claims against Horizon and Horizon NJ Health pursuant to N.J.S.A. § 17B:27-44.2 and the New Jersey Consumer Fraud Act are also dismissed.  Finally, the Court shall continue to exercise supplemental jurisdiction over Count I, Plaintiff's breach of contract claim against Horizon NJ Health.

/s/ Freda L. Wolfson
Honorable Freda L. Wolfson
United States District Judge

Dated: May  13 , 2005