## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

|                                        |     |                          |
|----------------------------------------|-----|--------------------------|
| FRANK A. BRIGLIA,                      | :   |                          |
|                                        | :   |                          |
|     Plaintiff,     | :   | Civil Action No.         |
|                                        | :   | 03-6033(NLH)             |
|   v.                         | :   |                          |
|                                        | :   |                          |
| HORIZON HEALTHCARE SERVICES,           | :   | **OPINION**              |
| INC., d/b/a HORIZON BLUE               | :   |                          |
| CROSS/BLUE SHIELD OF NEW               | :   |                          |
| JERSEY, ET AL.,                        | :   |                          |
|                                        | :   |                          |
|     Defendants.    | :   |                          |

---

**APPEARANCES:**

FRANK P. SPADA, JR., and
JEFFREY A. CARR
PEPPER HAMILTON LLP
301 CARNEGIE CENTER
SUITE 400
PRINCETON, NJ 08543-5276
*Attorneys for Plaintiff and Counter Defendant Frank A. Briglia*

EDWARD S. WARDELL
KELLEY, WARDELL, CRAIG, ANNIN & BAXTER, LLP
41 GROVE STREET
HADDONFIELD, NJ 08033
*Attorneys for Defendants and Counter Claimants Horizon Healthcare Services, Inc., d/b/a Horizon Blue Cross/Blue Shield of New Jersey, and Horizon Mercy*

JAMES M. METS
ROOSEVELT PORTER
METS & SCHIRO, LLP
PO BOX 668
WOODBRIDGE, NJ 07095
    and
MICHAEL T SCARAGGI
ORANSKY, SCARAGGI, BORG & ABBAMONTE, PC
175 FAIRFIELD AVENUE
SUITE 1A
PO BOX 866
WEST CALDWELL, NJ 07007-0866

        and
DANIEL J. BRENNAN
MCALEESE, MCGOLDRICK & SUSANIN, PC
SUITE 240 - EXECUTIVE TERRACE
455 SOUTH GULPH ROAD
KING OF PRUSSIA, PA 19406
*Attorneys for Defendants N.J. Bricklayers and Allied Craftsman*
*Health and Welfare Fund and Gary J. Mercadante*

H. THOMAS HUNT, III
KAREN M. MURRAY
CURETON CAPLAN, PC
300 MIDLANTIC DRIVE
SUITE 200
MT. LAUREL, NJ 08054
*Attorneys for Defendant and Counter Claimant J&J Snack Foods*
*Corporation*

**HILLMAN, District Judge**

## I.   INTRODUCTION

There are four motions before the Court in this matter regarding the counterclaim filed against the plaintiff, Dr. Briglia, by Horizon Healthcare Services d/b/a Horizon Blue Cross/Blue Shield of New Jersey ("Horizon Blue Cross").  The first is plaintiff's motion for summary judgment on the counterclaim.  Second is Horizon Blue Cross's cross motion for partial summary judgment on its counterclaim.  The third and fourth motions arise from an attempt by defendants J&J Snack Foods Corporation ("J&J"), N.J. Bricklayers and Allied Craftsman Health and Welfare Fund ("BAC"), and Gary J. Mercadante ("Mercadante") to join in Horizon Blue Cross's motion for partial

summary judgment.[1]

## II.  BACKGROUND

Plaintiff, Frank A. Briglia, M.D., is a Board Certified pediatric care physician who brought claims against defendants for their failure to reimburse him for treatment he provided to several of their insureds.  Horizon Blue Cross and J&J filed counterclaims against Dr. Briglia for insurance fraud, common law fraud, and unjust enrichment alleging that Dr. Briglia submitted false insurance claims and was wrongfully reimbursed pursuant to those alleged false claims.

This case was originally assigned to Judge Freda L. Wolfson who entered an order and opinion on May 13, 2005, upon the motion to dismiss, or in the alternative, for summary judgment filed by defendants Horizon Blue Cross and Horizon Mercy.  Briglia v. Horizon Healthcare Services, Inc., No. 03-6033, 2005 WL 1140687 (D.N.J. May 13, 2005).  Judge Wolfson dismissed plaintiff's claim pursuant to 502(a)(1)(B) of ERISA,[2] and breach of fiduciary duty under ERISA against Horizon Blue Cross (Counts II and VI of the

---

[1] On October 24, 2006, the parties entered into a stipulation of dismissal resulting in the dismissal of defendant Strober Organization ("Strober").  Strober was the sole defendant named in Count V.

[2]  Plaintiff did not specify the specific statute under which he was bringing his claims, but Judge Wolfson determined that he was bringing his denial of benefits claim pursuant to Section 502(a)(1)(B) of ERISA, see 29 U.S.C. § 1132(a)(1)(B).

amended complaint).[3]  Id. at *10.  Judge Wolfson also dismissed plaintiff's claim pursuant to the New Jersey Prompt Payment Statute ("PPS") (Count VII of the amended complaint) finding that the PPS only applies where there is no dispute regarding a claim or fraud and in this case Horizon Blue Cross disputes the claims and alleges fraud against the plaintiff.  Id. at *11.  Judge Wolfson denied Horizon Mercy's request to dismiss plaintiff's breach of contract claim (Count I of the amended complaint) and retained supplemental jurisdiction over the claim since other

_____

[3]  Count VI of the amended complaint for breach of fiduciary duty was brought against Horizon Blue Cross and Mercadante and mirrors Count IV of the original complaint.  Although her opinion makes clear her intention to dismiss Count VI of the amended complaint against Horizon Blue Cross, the order on its face only mentions Count IV of the original complaint.  We have examined Count IV of the original complaint and Count VI of the amended complaint and see no material difference.  Accordingly, although she did not do so directly in her order, we construe Judge Wolfson's May 13, 2005 opinion and implementing order as having dismissed Count VI of the Amended Complaint as against Horizon Blue Cross.  However, Count VI also names defendant Mercadante.  The opinion and order do not address the merits of this count against defendant Mercadante nor did he move to dismiss this count.  Moreover, the Court's analysis turned on the specific finding that Horizon Blue Cross was not an ERISA fiduciary, a finding that may or may not apply to Mercadante.  Accordingly, he remains a defendant in Count VI.

Similarly, Judge Wolfson's dismissed Count V(a) of the original complaint (Count VII in the Amended Complaint) on the motion of the Horizon defendants but did not address whether the claim survived against the other defendants.  In contrast to the fiduciary claims discussed above, the basis for the dismissal was a failure to follow a statutory notice requirement, a legal defense that would apply for the benefit of all defendants.  Accordingly, we construe Count VII to be dismissed against all defendants whether or not they were addressed directly in Judge Wolfson's opinion and order or entered into a later stipulation of dismissal.

4

federal claims remained in the case.  Id. at *12.

     As a result of Judge Wolfson's opinion and order, the
remaining defendants in this case are Horizon Mercy, J&J, BAC and
Gary Mercadante.  Horizon Blue Cross remains as a
counterclaimant.  Plaintiff's surviving claims[4] are a breach of
contract claim against Horizon Mercy (Count I), 502(a)(1)(B)
claims against BAC (Count III) and J&J (Count IV), and a
statutory breach of fiduciary duty claim against Gary Mercadante
(Count VI).  Plaintiff faces counterclaims of violation of the
New Jersey Insurance Fraud Prevention Act, common law fraud and
unjust enrichment.


### III.  **DISCUSSION**

### A.  **Timeliness of the Motions for Summary Judgment**

     Before the merits of plaintiff's motion and defendants'
cross motions can be reached, it must be determined whether all
the filings were timely and properly filed.  In his reply,
plaintiff raises the issue that Horizon Blue Cross's cross motion
was untimely filed and J&J's and BAC/Mercadante's motions
joining Horizon Blue Cross's cross motion were improperly and
untimely filed.

---

     [4] References to counts in this sentence are to the counts in
the Amended Complaint.

On September 25, 2006, the Court entered a scheduling order
providing that dispositive motions were to be filed no later than
November 6, 2006, and that opposition to the motion should be
served in a timely fashion.  Counsel also were advised to follow
local motion practice rules.  In accordance with the scheduling
order, plaintiff filed his motion for summary judgment regarding
Horizon Blue Cross's counterclaim on November 6, 2006.  According
to local practice, the return date for the motion was set for
December 1, 2006, resulting in opposition papers being due on
November 17, 2006.  On November 16, 2006, Horizon Blue Cross
filed a notice of automatic extension which extended the response
date to December 1, 2006, and the new motion date to December 15,
2006.  On December 1, 2006, Horizon Blue Cross filed its
opposition to plaintiff's motion, and a cross motion for partial
summary judgment.  Plaintiff argues that Horizon Blue Cross's
cross motion is untimely because it was not filed on November 6,
2006, when dispositive motions were due in accordance with the
scheduling order.

Local Rule 7.1(h) permits a party to file a cross motion
"... related to the subject matter of the original motion ...
together with that party's opposition papers... ." See Davis v.
Twp. of Paulsboro, 371 F. Supp. 2d 611, 617 (D.N.J. 2005).  The
cross motion "... may be noticed for disposition on the same date
as the original motion, as long as the opposition papers were

6

timely filed." L.Civ.R. 7.1(h).  Horizon Blue Cross requested and received an automatic extension until December 1, 2006, to file its opposition papers.  Horizon Blue Cross timely filed its opposition papers on December 1, 2006.  Under Rule 7.1(h), the cross motion was permitted to be filed on the date the opposition was due since the cross motion pertains to the same subject matter of the original motion, i.e., Horizon Blue Cross's counterclaim.

Plaintiff has not argued that the cross motion is not related to the subject matter of his motion for summary judgment. Indeed, the parties even repeat the same language in both motions.  Further, the scheduling order does not specifically address the issue of when cross motions are due.  Thus, the local rules apply and Horizon Blue Cross's cross motion was timely filed.

Although Horizon Blue Cross's cross motion was timely filed, the briefs filed by the other parties appear untimely.  Horizon Blue Cross correctly specified on the cover of its opposition and on its cross motion that the motion date was December 15, 2006.[5]

---

[5] Under Local Rule 7.1(d)(5), after the automatic extension is granted, the new motion date is the next available motion date following the originally noticed date.  The regular motion dates for the Camden Vicinage of the U.S. District Court for the District of New Jersey are the first and third Friday of each month. L.Civ.R. 78.1.  Here, the originally noticed date was the first Friday, December 1, 2006.  The next available motion date was the third Friday, December 15, 2006.

Pursuant to Local Rule 7.1(d)(4), plaintiff's reply, if any, to the opposition would have been due "within seven calendar days after service of the opposition papers" or, December 8, 2006. With regard to the cross motion, Local Rule 7.1(h) permits the Court to "enlarge the time for filing a brief and/or papers in opposition to the cross-motion and adjourn the original motion date."  Although the cross motion was designated with a motion date of December 15, 2006, the electronic docketing indicates that a motion date was set for January 5, 2007.  This enlarged the time to file opposition papers from December 8, 2006, to December 22, 2006.

The docket shows that plaintiff filed his reply in support of his motion for summary judgment on December 11, 2006, and his opposition to the cross motion on January 5, 2007.  Following the local rules, both of these filings by plaintiff are untimely. Plaintiff's reply to the opposition was due December 8, not December 11, 2006, and his opposition to the cross motion (using the motion date provided by the electronic filing system) was due December 22, 2006, not January 5, 2007.

It is within this Court's discretion to dismiss any brief that has not been timely filed. L.Civ.R. 7.1(d)(7); see U.S. v. Eleven Vehicles, Their Equipment and Accessories, 200 F.3d 203, 214 (3d Cir. 2000)(concluding that local court rules play a significant role in the district courts' efforts to manage

8

themselves and their dockets and holding that "it is not an abuse of discretion for a district court to impose a harsh result, such as dismissing a motion or an appeal, when a litigant fails to strictly comply with the terms of a local rule"); Croker v. Applica Consumer Products, No. 05-3054, 2006 WL 626425, at *3 (D.N.J. March 10, 2006)(refusing to consider exhibits to a motion filed beyond deadlines established by L.Civ.R. 7.1).

Here, plaintiff's reply in support of his motion for partial summary judgment and his response to the cross motion were filed beyond the deadline.  Although we do not condone such behavior, especially in instances where a party complains that his adversary's brief should be stricken as untimely when his briefs were filed late, we do recognize that the filing of the cross motion and new motion date could have raised confusion over when filings were due.  Also, the opposing parties have not filed any objection to plaintiff's untimely filings.  Moreover, when deciding summary judgment, we think that striking plaintiff's briefs in this instance as untimely would result in too harsh a sanction.  See Player v. Motiva Enterprises, No. 02-3216, 2006 WL 166452, at *3 (D.N.J. Jan. 20, 2006)(finding that a district court should not grant a motion for summary judgment without examining the merits (citing Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir.1991), citing Anchorage Assoc. v. Virgin Islands Bd. of Tax Rev., 922 F.2d 168 (3d Cir. 1990)) and permitting

plaintiff's untimely opposition to a motion for summary judgment); First Union Nat. Bank v. Bank One, No. 01-1204, 2002 WL 501145, at *4 (E.D.Pa. 2002)(although not condoning dilatory conduct, refusing to strike cross-motion for summary judgment as unduly harsh sanction).  Therefore, plaintiff's reply and opposition to the cross motion will be considered by the Court.

       The remaining "filing issue" is plaintiff's objection to J&J's and BAC/Mercadante's motions joining in Horizon Blue Cross's cross motion for summary judgment.  Plaintiff complains that the motions were untimely and improper.  J&J and BAC/Mercadante filed their joinder motions on December 8, 2006. The joinder motions filed by J&J and BAC/Mercadante were not replies, but motions.  As dispositive motions, they were due on November 6, 2006, pursuant to the scheduling order.  Unlike Horizon, J&J and BAC/Mercadante did not request an automatic extension to respond to plaintiff's motion for summary judgment so their motions could not be considered cross motions filed together with an opposition.  Even if they had filed an opposition, the cross motion would have been due December 1, not December 8, 2006.

       To further complicate the matter, although J&J filed a counterclaim, BAC and Mercadante have not.  Moreover, it appears that the only purpose of J&J's and BAC/Mercadante's joinder motions is to support Horizon Blue Cross's counterclaim.  Most

often when defendants join in a motion filed by another defendant, the motion requests that the court dismiss plaintiff's claims.  Here, Horizon Blue Cross is asking the court to grant summary judgment in its favor regarding the claims it, and only it, has brought against plaintiff.

Thus, we deny J&J's and BAC/Mercadante's joinder motions for summary judgment on the ground that they were untimely filed over four weeks past the deadline.  The Court's refusal to consider the untimely motions is not prejudicial because the motions contained no argument on J&J's and BAC/Mercadante's behalf but merely served to support Horizon Blue Cross's cross motion on Horizon Blue Cross's counterclaim, which motion has been found to be timely filed.  Therefore, we turn to the merits of plaintiff's motion for summary judgment and Horizon Blue Cross's cross motion for partial summary judgment.

**B.   Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

11

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).  If review of a

12

cross motion for summary judgment reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts. See Iberia Foods Corp. v. Romeo Jr., 150 F.3d 298, 302 (3d Cir. 1998) (citation omitted).

**C.   Summary Judgment on Horizon's Counterclaim**

　　　**1.   Horizon's Standing to Bring Claims Against Plaintiff**

In the Court's previous opinion regarding the motion to dismiss, Judge Wolfson dismissed plaintiff's 502(a)(1)(B) claim against Horizon Blue Cross on the ground that plaintiff could not seek reimbursement from Horizon Blue Cross since his patients (the beneficiaries or plan participants) had not or could not assign to him their rights to benefits under the plan. Briglia, 2005 WL 1140687, at *10. The Court also dismissed plaintiff's breach of fiduciary duty claim against Horizon Blue Cross finding that it was not a fiduciary under ERISA. Id. Based on these holdings of the Court, plaintiff filed his motion for summary judgment arguing that since he did not have standing to bring claims against Horizon Blue Cross where it served merely as a plan administrator, then Horizon Blue Cross does not have standing to bring claims against him when it serves the same role. The defendant counters that it has standing based on New Jersey's Insurance Fraud Prevention Act ("IFPA"), N.J.S.A.

13

17:33A-1 et seq.   Although the logic of plaintiff's argument
that what is fair for the plaintiff ought to be fair for the
defendant is superficially appealing, the issue is not as simple
as the plaintiff - or for that matter, the defendant - describes
it.

The IFPA was enacted by the New Jersey Legislature in an
effort to prevent fraud by:

(1) Facilitating the detection of insurance fraud;
(2) Eliminating the occurrence of such fraud through the
    development of fraud prevention programs;
(3) Requiring the restitution of fraudulently obtained
    insurance benefits; and
(4) Reducing the amount of premium dollars used to pay
    fraudulent claims.

N.J.S.A. 17:33A-2; Allstate Ins. Co. v. Lopez, 710 A.2d 1072,
1080 (N.J.Super. 1998)(citing Merin v. Maglaki, 599 A.2d 1256
(N.J. Super. 1992)).

The courts of New Jersey have recognized the public policy
and purpose behind enacting the IFPA to combat fraud.  See
Allstate New Jersey Ins. Co. v. Cherry Hill Pain and Rehab
Institute, 911 A.2d 493, 500 (N.J. Super. 2006)(remarking,
"[f]irst and foremost, we note '[t]hat there is a strong public
policy in this State to root out insurance fraud.'" (citing
Varano, Damian & Finkel, L.L.C. v. Allstate Ins. Co., 840 A.2d
262 (App. Div. 2004)).  The Supreme Court of New Jersey remarked
that insurance fraud is a "problem of massive proportions" in New

14

Jersey resulting in "substantial and unnecessary costs to the general public in the form of increased rates." Id. (citing Merin v. Maglaki, 599 A.2d 1256 (N.J. 1992).

As a remedial statute, the New Jersey Supreme Court has held, "we must construe the [IFPA]'s provisions liberally to accomplish the Legislature's broad remedial goals." Liberty Mutual Ins. Co. v. Land, 892 A.2d 1240, 1246 (N.J. 2006)(citing to Young v. Schering Corp., 660 A.2d 1153 (N.J. 1995) for the proposition that "where the Legislature's intent is remedial, a court should construe a statute liberally.").

Even with its laudatory purpose, a remedial statute alone can not provide what is otherwise lacking under Article III of the Constitution, i.e., an actual injury.  We need not address that issue here since the statute itself places the same burden on a claimant to prove actual damages as the Constitution places on any other claimant in federal court to allege and prove sufficient actual or threatened harm to create a real case or controversy.  That is, the plain language of the statute limits claimants to: "[a]ny insurance company damaged as the result of a violation of any provision of this act [who] may sue therefor in any court of competent jurisdiction to recover compensatory damages, which shall include reasonable investigation expenses, costs of suit and attorneys fees." N.J.S.A. 17:33A-7a; accord Liberty Mutual Ins. Co. v. Land, 892 A.2d 1240, 1246 (N.J. 2006);

15

Allstate Ins. Co. v. Lopez, 710 A.2d at 1080.  Thus, a plain
reading of the statute merely begs, and does not answer, the
question of whether the defendant has suffered an injury in fact.
Here, that analysis requires several steps.

First, plaintiff acknowledges that where defendant Horizon
Blue Cross paid claims from its own funds as the participant's
insurer, rather than acting merely as an administrator for
another insurer, it would have standing to assert claims of
payments induced by fraud.  See Plaintiff's Brief in Support of
Motion For Summary Judgement, p. 3.  Thus, at least with regard
to any counterclaim based on fraudulent payments made by Horizon
Blue Cross to the plaintiff for services rendered to its directly
insured clients,[6] defendant has asserted sufficient facts that if
proven would establish both constitutional standing and the
element of damages under the IFPA.

Plaintiff's argument that Horizon Blue Cross does not have
standing to bring claims on behalf of the two remaining self-
insured plans, BAC and J&J, since Horizon is only the third-party
administrator and not the payor of the claims, presents a closer
call.  However, plaintiff's argument omits a crucial difference
between its affirmative claims which Judge Wolfson dismissed and

---

[6] At least one patient, L.D., had been identified as being
directly insured by Horizon Blue Cross.  See Plaintiff's Brief in
Support of  Motion For Summary Judgement, p. 3.

the claims now asserted by the defendant.  In the first instance,
Judge Wolfson held that plaintiff could not assert claims on
behalf of patients who did not or could not assign their
benefits.  However, it does not appear that Horizon Blue Cross
suffers from the same disability, at least with regard to BAC.
Horizon argues convincingly that the services agreement between
Horizon and BAC permits Horizon to bring suit to recover payment
made on fraudulent claims.  Section 7.07 of the administrative
services agreement between Horizon and BAC states:

> We will assist You in making recoveries through
> application of the subrogation, coordination of
> benefits, and workers' compensation provisions
> of the ERISA plan document describing Your
> Program and in recovering payments made upon
> fraudulent Claims.  We shall not be required to
> bring suit to do so.  However, if We elect to
> sue, You hereby consent to Our doing so.

Plaintiff did not reply to Horizon Blue Cross's argument
that BAC assigned its right to sue to recover payments made upon
fraudulent claims and that such an assignment of rights confers
constitutional standing on Horizon Blue Cross.  We find that the
plain language of this contract provides an assignment by BAC of
its right to sue to Horizon.  Cf. Lech v. State Farm Ins. Co.,
762 A.2d 269, 271 (N.J. Super. 2000) (finding insured claims
contractual and thus assignable).  The assignee's rights can be
no greater and no less than the rights of the assignor.  Id.
(citations omitted).

17

Finally, Horizon Blue Cross does not argue that an assignment of benefits clause was executed between it and J&J. Rather, it states summarily that Dr. Briglia's argument is moot because both "J&J, to the extent it funded any claims, and the BAC Fund are parties to this action.  Each is entitled to pursue its claims directly against Dr. Briglia."[7]  We construe this argument as an abandonment by Horizon Blue Cross of any claim against plaintiff where Horizon Blue Cross did not pay Briglia from its own funds or did not receive an assignment of claims under an administrative services agreement.

In summary, we hold that Horizon Blue Cross has standing to assert a claim for fraud and related claims against the plaintiff where it has paid out such claims as the insurer.  It also has standing to assert claims where it has a valid assignment of claims held by others. See <u>Vermont Agency of Natural Rsources v. U.S. ex rel Stevens</u>, 529 U.S. 765, 765-66 ("assignee of a claim has standing to assert the injury in fact suffered by the assignor").  However, unassigned claims may only be asserted in this litigation by the self-insured plan.

## 2.    Fraud Claims Against Dr. Briglia

In his motion for summary judgment, plaintiff argues that Horizon cannot prove the elements of fraud against him and,

----

[7] We note that J&J filed a counterclaim but that BAC has not.

18

therefore, the claims should be dismissed.  In its opposition and cross motion, Horizon takes the opposite position and argues that Dr. Briglia knowingly submitted false insurance claims in violation of the IFPA.  Since both motions address the same topic, we address them together.

The IFPA states in relevant part,

> a.  A person or a practitioner violates this act if he:
>
> (1) Presents or causes to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy ... knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim;

N.J.S.A. 17:33A-4(a)(1).

The parties' arguments essentially turn on whether or not Dr. Briglia knew that he was submitting false claims.  Horizon argues that Dr. Briglia knowingly submitted insurance claims for services that he did not perform.  This appears to be a triable issue of fact.  Dr. Briglia admits that he provided review and case management of home care services for his pediatric patients on a, at best, weekly basis.  Generally, he did not personally perform tests on the patients.  These services were provided by other agencies, not Dr. Briglia or his employees.

Nonetheless, Horizon Blue Cross appears able to offer competent evidence that Dr. Briglia submitted "per diem"

insurance claims for both management services and for home care services as if he or his employees had provided the services actually performed by others on a daily basis.  These claims state or imply that the plaintiff went to the insureds' homes and performed services himself or that he monitored them himself on a daily basis.  Coupled with the plaintiff's contemporaneous certifications that he personally performed the questioned services, this evidence is sufficient to raise a material issue of fact as to whether plaintiff knew he was submitting fraudulent claims.  Sitting in an office once a week reviewing work done by others on a daily basis at someone's home is very different than doing the work yourself or reviewing it the day the work is performed.

While Dr. Briglia contests the conclusion he knowingly submitted false claims, that issue is for the jury to decide.  It is to the factfinder that Dr. Briglia should assert his defenses that: Horizon Blue Cross's own witnesses will admit that he had no intent to submit false or misleading information;[8] he

---

[8] Plaintiff's most compelling argument for summary judgment is the apparent admission by defendant's expert that she did not believe the plaintiff intended to imply he performed anything other than oversight services.  <u>See</u> Spada Declaration at Exhibit A.  However, it is difficult to evaluate the scope of this admission when plaintiff has provided only a brief excerpt from the Avakian deposition.  Moreover, Avakian does not appear to waiver in her assertion that plaintiff's use of individual procedure codes was improper and led to excessive payments.  Nor does plaintiff's defenses that he only did what hospitals did for years or that he had used the same codes for years fully answer

submitted information relying upon his own interpretation of
billing codes used during decades of service; and his
interpretation is supported by expert testimony and coding
professionals.  These are factual assertions, not legal defenses.
More importantly, they run contrary to the billing codes
themselves, Dr. Briglia's personal attestation that he performed
the sometimes daily services described in the submitted claims,
and his subsequent admissions that his only real involvement was
weekly oversight of services performed by others.[9]

In sum, the arguments presented by the parties show that
whether couched as claims for individual tests not personally
performed or claims for daily monitoring services personally
performed only weekly, genuine issues of material fact exist as
to whether Dr. Briglia knowingly submitted false claims to
Horizon Blue Cross for services he did not personally perform.
We cannot conclude as a matter of law that reasonable minds could
not differ as to whether Dr. Briglia knowingly submitted false

---

defendant's claims of fraud.  Just because hospitals are free to
bill for the services of their employees does not mean it is not
fraudulent for a doctor to bill for services provided by non-
employees.  Nor does getting away with fraudulent conduct for a
long period time make such conduct, if proven, less crooked.  In
the end, issues of plaintiff's intent in using certain codes and
whether the defendant was mislead by the use of those codes are
fact questions best left to the jury and the crucible of trial.

[9] In some cases, the facts may show that Dr. Briglia billed
the insurance companies for tests actually performed by family
members on their own children.

claims in violation of IFPA, or committed common law fraud.[10]

## IV.  CONCLUSION

Based on the foregoing, plaintiff's motion for summary judgment as to Horizon's counter claim is denied;  Horizon's cross motion for partial summary judgment on their counterclaim is also denied; J&J Snack Foods Corporation's motion joining Horizon's cross motion is dismissed; and N.J. Bricklayers and Allied Craftsman Health and Welfare Fund together with Gary J. Mercadante's motion joining Horizon's cross motion is also dismissed.

An order will be entered consistent with this opinion.

        s/Noel L. Hillman
        NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey
Date: July 3, 2007

---

[10] It follows that if defendant Horizon Blue Cross may still prevail on its counterclaim that plaintiff knowingly submitted false claims then it may still prevail on a theory requiring lesser intent: i.e. that Dr. Briglia was unjustly enriched by conduct that - while not fraudulent - caused the defendant to pay the plaintiff by mistake.  Cf., New Jersey Manufacturers Ins. Co. v. Gonsalves, 366 N.J. Super 459, 468 ("in general, one who pays money under a mistake of fact may be entitled to recover the payment[]").  Accordingly, the plaintiff's motion to dismiss that part of defendant's counterclaim will be denied.