### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| FRANK A. BRIGLIA, | : | |
| | : | Civil Action No. |
| Plaintiff, | : | 03-6033-NLH-JS |
| | : | |
| v. | : | **FED. R. CIV. P. 52(a)(1)** |
| | : | **OPINION** |
| HORIZON HEALTHCARE SERVICES, | : | |
| INC., et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

Frank P. Spada, Jr., Esquire
Jeffrey A. Carr, Esquire
PEPPER HAMILTON LLP
301 Carnegie Center, Suite 400
Princeton, NJ 08543

    *Attorneys for Plaintiff*

James M. Mets, Esquire
Kevin McGovern, Esquire
Roosevelt Porter, Esquire
METS, SCHIRO & McGOVERN, LLP
P.O. Box 668
Woodbridge, NJ 07095

    *Attorneys for Defendants*

**HILLMAN, District Judge**

## I.   INTRODUCTION

This case involves Plaintiff's claims that Defendant New Jersey Bricklayers and Allied Craftsman Health Fund ("BAC Fund") breached the terms of its insurance plan ("BAC Plan") by failing to pay benefits for medical treatment provided to certain covered individuals and that Defendant Gary J. Mercandante breached his

fiduciary duties by failing to properly administer claims under the BAC Plan.[1]  An eleven-day bench trial was held in November 2007 with supplemental submissions thereafter.  The Court now issues this Opinion in accordance with Federal Rule of Civil Procedure 52(a)(1).[2]

## II.  BACKGROUND

Plaintiff, Frank A. Briglia, is a board certified pediatrician, who specializes in caring for technology dependant chronic care patients.  From 1999 through the present, Dr. Briglia has served as the Director of Specare Center for Special Healthcare Needs ("Specare").  Additionally, from 2003 through the present, Dr. Briglia has served as Medical Director of the Ventilator-Dependent Unit at Wanaque Pediatric Rehabilitation Center ("Wanaque").

Among the patients Dr. Briglia provided care to through Specare were Dominique H. and Paul K.,[3] both of whom were covered

---

[1] This Court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1331.

[2] This Opinion constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Rule 52(a).  Pierre v. Hess Oil Virgin Islands Corp., 624 F.2d 445, 450 (3d Cir. 1980) (holding that to be in compliance with Rule 52(a), findings of fact and conclusions of law do not need to be stated separately in a court's memorandum opinion); see also Wedgewood Village Pharmacy, Inc. v. Ashcroft, 293 F. Supp. 2d 462, 466 (D.N.J. 2003) (issuing an opinion which constituted the courts findings of fact and conclusions of law).

[3] Dominique H. also received care from Dr. Briglia through Wanaque.

under the BAC Plan through their parents.  Dominique H. and Paul K.'s respective medical conditions required that they be kept on mechanical ventilators.  Given the cost of treating ventilator dependant children in a hospital, both received in-home care, which is more cost-effective.

The BAC Plan is a self-insured employee welfare benefit plan, as defined in 29 U.S.C. § 1002(1).  Mr. Mercandante is the Administrative Manager for the BAC Fund.  Over the years the BAC Fund has employed a number of third-party administrators.  Prior to 2002, the BAC Fund's third-party administrator was Union Labor Life Insurance Company ("ULLICO").  Beginning in January 2002, Horizon Blue Cross/Blue Shield ("Horizon") took over as third-party administrator.  Under the terms of the BAC Plan, in order to be covered, all home health care benefits had to be coordinated though the third-party administrator.  The BAC Plan also expressly provides that changes to or discontinuation of the BAC Plan "will not affect you or your beneficiary's right to any benefit to which you have already become entitled."

During the course of his treatment of Dominique H. and Paul K., Dr. Briglia billed for his services using, *inter alia*, the following CPT codes:[4] 94657 for Ventilator Management; 94770 for

---

[4] Current Procedural Terminology ("CPT") is a uniform coding system for health care procedures, which was developed by the American Medical Association, and is used when submitting claims for health care coverage to third-party payers.

3

End Tidal $CO_2$ Monitoring; 94762 for Pulse Oximetry; and 99374 for Care Plan Oversight.  While ULLICO was the BAC Plan's third-party administrator, Dr. Briglia never had difficulty obtaining payment for his services using these codes.  Mr. Mercandante and the Fund were aware that ULLICO reviewed and paid Dr. Briglia's claims for services to Dominique H. and Paul K.  From time to time, ULLICO would deny one of Dr. Briglia's claims for lack of information. Dr. Briglia would then have additional information regarding the claims provided to ULLICO and the claims would ultimately be paid.

Dr. Briglia first began treating Dominique H. in 1999, and continued treating her until her death in May 2007.  During that time, Dr. Briglia was in daily contact with either Dominique H.'s parents or her home care nurses regarding her medications, ventilator settings, oxygen levels, end-tidal $CO_2$ recordings, and seizures.  Dr. Briglia coordinated Dominique H.'s home health care, including her nursing care, durable equipment, diet, and medication.  He was also responsible for reading and interpreting the data collected by the durable medical equipment in Dominique H.'s home, and using this information to determine treatment strategy.

In 2001, Dominique H.'s father, Todd, received a letter from the BAC Fund indicating that its third-party administrator would change from ULLICO to Horizon beginning January 1, 2002.  After

receiving this notice, Todd received confirmation from Mr. Mercandante that the benefits under the BAC Plan would remain the same and that only the third-party administrator of the Plan would be changing.

After Horizon began administering the BAC Plan, the payment of Dr. Briglia's claims became inconsistent.  Todd contacted Mr. Mercandante on June 24, 2002 to express concern that Dr. Briglia's bills were not being paid as they had been before Horizon became the third-party administrator.  Around that time, Todd engaged an attorney to represent him in connection with the BAC Fund's payment for his daughter's medical services. Thereafter, Todd received a letter that the BAC Fund was denying coverage for his daughter's treatment, and that an independent medical review was being conducted by Horizon.  It is unclear whether such a review was ever conducted.  The BAC Fund then disputed that it was the primary carrier, asserting that the insurance of Todd's wife and Medicaid were responsible for coverage.  During this period, Dr. Briglia's bills were not being paid by the BAC Fund, although he continued to provide treatment.

Due to the refusal of the BAC Fund and Horizon to pay for Dominique H.'s care, Dr. Briglia submitted the claims to AmeriHealth, Dominique H.'s mother's carrier, the secondary carrier.  These claims were submitted the same as they had been to the BAC Fund.  AmeriHealth paid the claims in 2003 that the

BAC Fund and Horizon had refused to.  When the secondary carrier changed to Aetna/Coresource, Dr. Briglia submitted his claims to that entity, and his bills were initially paid.  After approximately four to six months, Aetna/Coresource, discovered that the BAC Plan was the primary insurance and denied any further payment.

Dr. Briglia first began treating Paul K. in September 2000, and continued treating him until his condition no longer warranted use of a ventilator in or around March 2004.  Dr. Briglia coordinated Paul K.'s total home health care, including nursing care, durable equipment, diet, and medication.  He was in contact with Paul K.'s mother, Debra Grasso, every day and was available at any time to coordinate Paul K.'s treatment and care. Although Paul K.'s treatment had been fully covered when ULLICO served as the BAC Plan's third-party administrator, the Fund stopped paying Dr. Briglia's bills in January 2002 when Horizon took over as third-party administrator.

Horizon enrolled Paul K. in its case management program administered by Care Advantage.  The case manager requested a letter of medical necessity from Dr. Briglia, which he provided. Dr. Briglia also provided additional documentation explaining the need for Paul K.'s care, although he did not allow Horizon to conduct a complete audit of all of Paul K.'s medical records.

Ms. Grasso contacted Horizon on numerous occasion in late

2002 and early 2003 to resolve her son's claims.  Horizon subsequently informed Dr. Briglia that all of his claims were covered and payable at one hundred percent.  For the period from July 2002 until November 2002, Paul K.'s claims were paid in full, without bundling, for all charges under CPT Codes 94657, 94762, 94770, and 99374.

Following this period, Horizon refused to release payments for Paul K.'s claims, even though payment had been approved by a Horizon investigator, Joyce Johnson.  When Ms. Grasso contacted Ms. Johnson about Horizon's failure to release payment, Ms. Johnson advised her that the claims should have been paid.  Dr. Briglia continued to treat Paul despite not being paid.

In determining plan coverage and how claims were to be billed, the BAC Fund Plan Administrator, Mr. Mercandante, relied exclusively upon the BAC Fund's third-party administrators, ULLICO and Horizon.  Mr. Mercandante was responsible to the BAC Fund's Board of Trustees, and dealt with them directly on appeals by the BAC Fund's plan participants.  Horizon, as the BAC Fund's third-party administrator, reviews and pays claims for BAC Fund participants using the BAC Fund's monies.  In making the determination to deny the claims and appeals of Dominique H. and Paul K., the BAC Fund and Mr. Mercandante also relied exclusively upon the advice of Horizon.

The Fund never issued a written denial of coverage regarding

Paul K.  Although the Fund did issue such a letter regarding Dominique H.'s claims, it did not contain a reason for the denial or cite to the applicable portion of the Plan under which the denial was made.  The decisions by the BAC Fund to deny coverage was made solely on the recommendations of Horizon.  The Fund did not perform any independent analysis or review in adopting Horizon's recommendations.  Horizon did not advise the BAC Fund of the rationale for its recommendations or the basis for it. The BAC Fund did not commission an independent medical review or review any documents before adopting Horizon's recommendation.

Upon an appeal by a plan participant to the BAC Fund Trustees, the Plan Administrator, legal counsel, and Third-Party Administrator should advise the Trustees of how the BAC Fund pays for claims, whether or not the appeal meets the guidelines of the BAC Fund, and how the BAC Fund handled similar cases in the past. The Trustees were never advised that ULLICO had previously paid the same claims that were then being appealed.  Richard Tolson, a BAC Fund Trustee, had no information as to the basis for the Fund's denial of Dr. Briglia's claims billed under CPT Codes 94657, 94660, 94762, 94770, and 99374.  The trustees simply adopted the decision of Horizon regarding the denial of the claims.

As a result of the BAC Fund's denial of coverage, a significant number of Dr. Briglia's bills went unpaid.

8

Specifically, Dr. Briglia billed $165,102.00 for his treatment of Paul K. from January 1, 2002 through March 4, 2004 that went unpaid.  Dr. Briglia also billed $437,468.76 for his treatment of Dominique H. from January 1, 2002 through December 14, 2006 through Specare, as well as an additional $67,968.82 for his treatment of Dominique H. from December 14, 2006 through May 5, 2007 through Wanaque, that went unpaid.

## III. DISCUSSION

At issue in this trial is whether the BAC Plan improperly denied Dominique H. and Paul K. benefits under the Plan, and whether the BAC Plan Administrator, Mercandante, breached his fiduciary duty in denying those benefits.[5]  The Court must also determine whether Plaintiff submitted fraudulent claims or was unjustly enriched by the payments made by the BAC Fund.[6]  These

---

[5] Count VII of Plaintiff's Amended Complaint also set out a claim for failure to make prompt payment of benefits in violation of N.J. Stat. Ann. § 17B:27-44.2 against both the BAC Plan and Mercandante.  However, Plaintiff failed to include this claim as an issue to be addressed at trial in the Joint Final Pretrial Order.  Fed. R. Civ. P. 16(d) provides that pretrial order "control[] the course of the action unless the court modified it."  Once entered, a pretrial order "limits the issues for trial and in substance takes the place of pleadings covered by the pretrial order."  Basista v. Weir, 340 F.2d 74, 85 (3d Cir. 1965).  Even construing the Joint Final Pretrial Order liberally "to embrace all the legal and factual theories inherent in the issues defined therein," United States Gypsum Co. v. Schiavo Bros., 668 F.2d 172, 181 n.12 (3d Cir. 1981), the Court finds that Plaintiff failed to include this issue.  Accordingly, the Court finds it to be waived.

[6] Defendants never filed any counterclaim in this action. (See Answer and Affirmative Defenses, Doc. No. 104.)  The Court

issues shall each be addressed in turn.

**A.   Denial of Benefits**

Count III of Plaintiff's Amended Complaint sets out a claim for improper denial of benefits against the BAC Fund.  It is well established that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); see also Metropolitan Life Ins. Co. v. Glenn, --- U.S. ---, 128 S.Ct. 2343, 2348 (2008); Doroshow v. Hartford Life & Accident Inc. Co., 574 F.3d 230, 233 (3d Cir. 2009).  In this case, the BAC Plan gave no discretionary authority to either the BAC Fund or the third-party administrators to determine eligibility or construe the terms of

---

noted this fact previously, in its Opinion, dated July 3, 2007, denying *inter alia* the BAC Fund and Mercandante's motion joining in former defendant Horizon's cross-motion for summary judgment on its counterclaim.  However, Defendants asserted in the Joint Final Pretrial Order and argued at trial that Dr. Briglia submitted fraudulent claims and was unjustly enrichment by the payments made by the BAC Plan.  Once entered, a pretrial order "in substance takes the place of pleadings covered by the pretrial order."  Basista, 340 F.2d at 85.  Moreover, Fed. R. Civ. P. 15(b)(2) provides that "[w]hen an issues not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings."  Accordingly, based on the inclusion of these issues in the Joint Final Pretrial Order and the parties implied consent in addressing them at trial, the Court will consider these claims.

the plan.  The Court, therefore, reviews the denial of benefits
in this case *de novo*.  In conducting its *de novo* review, the
Court is not limited to the evidence that was before the Fund's
Administrator.  <u>See</u> <u>Luby v. Teamsters Health, Welfare, & Pension
Trust Funds</u>, 944 F.2d 1176, 1184-85 (3d Cir. 1991); <u>Lasser v.
Reliance Standard Life Ins. Co.</u>, 130 F. Supp. 2d 616, 627 (D.N.J.
2001).

Claims for ERISA plan benefits are contractual in nature.
<u>See</u> <u>Burstein v. Ret. Account Plan for Emplos. of Allegheny Health
Educ.</u>, 334 F.3d 365, 381 (3d Cir. 2003).  Under ERISA's
framework, an "employee benefit plan [is] governed by written
documents and summary plan descriptions, which are the
statutorily established means of informing participants and
beneficiaries of the terms of their plan and its benefits."  <u>In
re Unisys Corp. Retiree Med. Ben. ERISA Litig.</u>, 58 F.3d 896, 902
(3d Cir. 1995).  In interpreting the provisions of an ERISA plan,
terms must be given their plain meanings.  <u>Id.</u>; <u>see also</u> <u>Gould v.
Great-West Life & Annuity Ins. Co.</u>, 959 F. Supp. 214, 220 (D.N.J.
1997).  Where the language of the plan is susceptible to more
than one reasonable interpretation, it will be found to be
ambiguous.  <u>Taylor v. Continental Sroup Change in Control
Severance Pay Plan</u>, 933 F.2d 1227, 1232 (3d Cir. 1991).  "The
determination of whether a term is ambiguous is a question of
law."  <u>Id.</u>

Where the contract is determined to contain ambiguities, the Court may consider extrinsic evidence, such as the intent of the plan's sponsor, the reasonable understanding of the beneficiaries, past practice of the fund and its administrators, customary usage in the trade, and other competent evidence bearing on the understanding of the parties to resolve any ambiguities in the plan document.  See Bill Gray Enterprises, Inc. Employee Health & Welfare Plan v. Gourley, 248 F.3d 206, 218 (3d Cir. 2001); Alexander v. Primerica Holdings, Inc., 967 F.2d 90, 96 (3d Cir. 1992); Taylor, 933 F.2d at 1233.  "[T]he interpretation of ambiguous plan provisions is a question of fact."  Taylor, 933 F.2d at 1232.  If this factual inquiry into the intended meaning of the plan proves fruitless, and only then, the court may construe the terms of the plan against the party that drafted it.  Id. at 1233.

The BAC Plan specifies that it provides coverage for "Home Health Care Benefits (which must be coordinated through Horizon Blue Cross Blue Shield Case Management . . . in order to be a covered benefit)."  (Pl. Ex. 4 at 27.)  In a section entitled "Home Health Care Benefit," the BAC Plan provides that these "[b]enefits will be payable under this provision upon receipt of due proof that a covered person, while covered under this Benefit, has incurred Reasonable and Customary charges for the Medically Necessary services of a Home Health Care Agency."  (Id.

12

at 46.)  It also provides that "[t]he services must be in accordance with the Home Health Care Plan," and that "[a]ll home health care services must also be coordinated through Horizon Blue Cross Blue Shield Case Management team in order to be eligible for coverage under this Plan."  (<u>Id.</u>)  The BAC Plan is silent, however, as to what CPT codes should be utilized in billing, the frequency of billing, and the bundling of codes.

In the absence of any BAC Plan language on point, Plaintiff relies upon the past practice of the BAC Fund and its third-party administrators, as well as other extrinsic evidence, in arguing that all claims submitted using CPT codes 94657, 94762, 94770, and 99374 were appropriate.  As set forth above, the BAC Fund, through its third-party administrator ULLICO, consistently paid Dr. Briglia's bills for both Dominique H. and Paul K. prior to January 2002.  Further, the BAC Fund continued to pay Dr. Briglia's bills for Paul K. through November 2002, well after Horizon became its third-party administrator.  Even after this time, Ms. Johnson from Horizon advised Ms. Grasso that Paul K.'s claims should have been paid.  The Court finds this evidence of the BAC Fund's past practice to be very persuasive.

Plaintiff also presents significant extrinsic evidence regarding the payment of the CPT codes at issue by the BAC Fund. First, in 2001, Horizon Mercy, an affiliate of Horizon, contracted with Dr. Briglia for the use of certain payment codes,

which were to be billed separately on a per diem basis (not
bundled).  Second, Horizon does not have any policy regarding how
many times CPT Code 99374 may be billed per month.  Third,
Horizon had previously paid either the full amount billed by Dr.
Briglia, or a discounted amount, but always substantially more
than Medireg rates.  Fourth, Dominique H.'s secondary carriers,
AmeriHealth and Aetna/Coresource, both paid the claims without
bundling or limiting payment to one per month during the period
they were thought to be the primary carrier.  Finally, from 2004
through 2007, Dr. Briglia treated a number of ventilator-
dependant children similar to Dominique H. and Paul K., who dealt
with Horizon either as insurer or third-party administrator.
With respect to at least two of these other patients, Horizon
paid for the same services, billed in the same manner as those
provided to Dominique H. and Paul K.  In neither instance were
the codes bundled or limited to one payment per month.  The Court
finds this evidence corroborative of the BAC Fund's past
practice.

Both parties also provided expert testimony as to industry
standards for billing under the CPT codes at issue.  Defendants'
expert witness, Alice Andress,[7] testified that the BAC Plan does
not permit CPT codes 94657, 94762, and 94770 to be billed

---

[7] Ms. Andress performed an analysis of Dr. Briglia's billing
practices from January 1, 2004 through February 29, 2004 for
Dominique H. and from March through May, 2002 for Paul K.

14

separately from 99374.  Further, Ms. Andress opined that CPT codes 94762 and 94770 are both component parts of and must both be bundled with 94657.  She also opined that Horizon could deny claims under the same billing codes under the same plan that ULLICO accepted.  In contrast, Plaintiff's expert witness, Deborah J. Grider, testified that although some carriers require CPT codes 94657 and 94770 to be bundled, she has also seen them billed separately.  Ms. Grider also opined that where the third-party administrator changes, but the plan stays the same, the new administrator should follow the previous administrator's criteria for payment.

Although seemingly in direct conflict, the Court finds that the testimony of the expert witnesses can be reconciled.  Both experts agreed that each carrier has its own specific guidelines and reimbursement schedule, and thus eligibility for payment is very carrier specific.  Thus, while one carrier may require bundling and once monthly payment of certain CPT codes, another may not.  Indeed, "Coding for Pediatrics 2007," which was introduced by Defendants, provides that "[m]ost payers bundle the pulse oximetry into E/M services and will not pay separately (even though this does not accurately reflect CPT guidelines or necessarily private payer policy)," and that "[p]ediatric coding experts recommend you keep reporting these services separately because not all commercial insurance companies follow Medicare's

guidelines." (Def. Ex. 19.)  Based upon this evidence, the Court

finds that carrier policy governs what CPT codes may be submitted

separately and how frequently such codes may be billed.  Further,

the Court finds that a new third-party administrator must

continue the policies of its predecessor, although it is not

obligated to continue payments that were made in error.

These findings are supported by the language of the BAC

Plan.  In a section entitled "Benefits Paid in Error or Fraud,"

the BAC Plan also provides that "[t]he Company has a right to

reimbursement for benefits paid under this Plan, if it is found

that such charges were paid in error."  (Id. at 84.)  Indeed,

Plaintiff's expert, Ms. Grider, concedes that carriers sometimes

make mistakes in paying physicians under certain CPT codes, and

that if they discover these mistakes they are not obligated to

continue payment.  However, mistakes aside, in a section entitled

"Plan Change or Termination," the BAC Plan provides that "[i]f

the Plan is changed or discontinued, it will not affect you or

your beneficiary's rights to any benefit to which you have

already become entitled."  (Pl. Ex. 4 at 91.)

Defendants argue that the BAC Fund's past practice is not

evidence that Dr. Briglia's claims should have been paid.

Defendants' expert, Ms. Andress, testified that any

inconsistencies in Horizon's reimbursements are attributable to

it mistakenly reimbursing for services that it should not have,

16

identifying the error, and then changing their reimbursement policy. Likewise, when Aetna was the insurance carrier, Ms. Andress testified, it mistakenly paid for CPT code 94770 while rejecting payment for CPT code 94762, when in her opinion both should have been rejected as component parts of CPT code 94657. Ms. Andress also opined that Aetna paid for CPT code 94770, but not for CPT code 94657, when it should have been done the opposite. Further, Ms. Andress opined, if Aetna paid for 99374 on a daily rather than monthly basis it must have been a mistake. The Court does not find this testimony to be persuasive. The broad assertion that the BAC Fund's history of paying Dr. Briglia's claims as billed was all a mistake is simply not credible in the face of the voluminous evidence of conscious past practice to the contrary. The BAC Fund's history of payment was consistent. While there do appear to be some internal inconsistencies with Aetna's payments, the Court does not find this to be significant in light of the fact that Aetna was not interpreting the BAC Plan, but rather Dominique H.'s mother's insurance policy.

Thus, the Court finds based on the evidence of past practice, industry standards, and the other extrinsic evidence presented that the BAC Plan provided coverage for CPT codes 94657, 94762, and 94770 to be billed separately and allowed for 99374 to be billed daily. Further, the Court finds that the BAC

17

Plan provides coverage for the rates billed by Dr. Briglia.[8]  The question then becomes whether Plaintiff has proven that he provided the services that would entitled him to payment under these codes.

Defendants have presented evidence that Dr. Briglia did not perform the services necessary for payment under CPT code 94762. Defendants' expert witness, Ms. Andress, testified that billing for overnight monitoring of pulse oximetry with CPT code 94762 is specifically limited to services provided between 11:00 p.m. and 7:00 a.m. the following morning.  Further, Ms. Andress testified that a physician may only bill for pulse oximetry readings performed under the supervision of a nurse or doctor, not those taken by family members.  In Ms. Andress's opinion no such readings were performed between 11:00 p.m. and 7:00 a.m. the following morning.  However, the ventilator machine (N290) used by Dominique H. and Paul K. took readings of oxygen saturation overnight, which Dr. Briglia then reviewed the following day. Despite Ms. Andress's opinion to the contrary, the Court finds that Dr. Briglia's use of CPT code 94762 was appropriate to bill for his review of the pulse oximetry readings taken by the ventilator during the preceding overnight.  In so finding the

---

[8] Although Defendants presented testimony that MediReg rates should have applied, the Court finds that such rates were not applicable in this case given the BAC Plan's history of paying the rates billed by Dr. Briglia and the substantial extrinsic evidence supporting his rates submitted by Plaintiff.

Court relies upon the carrier specific nature of CPT code billing policies and the voluminous evidence of the BAC Plan's past payment of Dr. Briglia's bills for this service.

Defendants also presented evidence that Dr. Briglia did not perform the services necessary for payment under CPT code 94770. Specifically, Defendants focus on the fact that the carbon dioxide measurements were documented on the Bayada Nurses Home Care Flow Sheets, and so performed by the nurses and not Dr. Briglia himself.  However, Plaintiff presented evidence that while Dr. Briglia did not personally document these measurements, he interpreted such data, and that only he could bill for that interpretation.  In light of the BAC Plan's history of paying for this interpretation under this CPT code, the Court finds Dr. Briglia's billing under this code to be compensable.

Defendants also presented evidence that Dr. Briglia was already compensated for some of the services be performed by Medicaid or other secondary insurers.  Specifically, Defendants elicited testimony that Dominique H. was covered by Medicaid while she was being treated at Wanaque, that secondary insurers paid some of Dominique H.'s claims in 2003, and that Paul K. received some coverage from Medicaid.  However, the evidence reflects that Plaintiff's damages do not include claims or amount that were paid by third parties.  Moreover, Defendants' argument that Dr. Briglia may not balance bill the BAC Fund for amounts

not covered by Medicaid is without merit.  <u>See</u> N.J. Admin. Code §
10:59-1.10 ("When a Medicaid/NJ FamilyCare beneficiary has other
health insurance, the Medicaid/NJ FamilyCare program requires
that such benefits be used first and to the fullest extent.")

Thus, the Court finds that Dr. Briglia did perform the
services necessary for payment under the CPT codes he billed, and
that no amounts paid by secondary insurers or Medicaid were
included in the damages sought.  Based upon the testimony and
exhibits presented by the parties, the Court finds that the BAC
Fund improperly denied payment to Dr. Briglia in the amount of
$165,102.00 for his treatment of Paul K. from January 1, 2002
through March 4, 2004, and $505,437.58 for his treatment of
Dominique H. from January 1, 2002 through May 5, 2007.

**B.   Breach of Fiduciary Duty**

Count VI of Plaintiff's Amended Complaint sets out a claim
for breach of fiduciary duty against Mercandante in his role as
administrator of the BAC Fund.  Pursuant to 29 U.S.C. § 1104,

> a fiduciary shall discharge his duties with
> respect to a plan solely in the interest of
> the participants and beneficiaries and -
>
> (A) for the exclusive purpose of:
>
> (I) providing benefits to participants and
> their beneficiaries; and
>
> (ii) defraying reasonable expenses of
> administering the plan;
>
> (B) with the care, skill, prudence, and
> diligence under the circumstances then

20

> prevailing that a prudent man acting in a like
> capacity and familiar with such matters would
> use in the conduct of an enterprise of a like
> character and with like aims;
>
> . . .
>
> (D) in accordance with the documents and
> instruments governing the plan . . . .

Plaintiff presented evidence at trial that Mercandante completely deferred to Horizon's decision to deny the claims from Dominique H. and Paul K. Horizon never informed Mercandante of the specific reasons for the denials. Mercandante was only told by Horizon that Dr. Briglia had not provided the required documentation. Further, Mercandante never made any independent investigation into the relevant issues to determine whether the claims were appropriate or made any effort to understand the nature of the home health care services provided to Dominique H. and Paul K. Indeed, Mercandante was unable to identify which provisions of the plan supported the denial of claims by Dominique H. and Paul K., aside from mentioning a provision limiting the number of nursing visits permitted. When the claims were appealed, Mercandante never advised the Trustees of the BAC Fund's prior history of paying the claims submitted by Dominique H. and Paul K. or any other background information regarding the claims. The Trustees only addressed the issue of nursing services, with Mercandante asserting that Dominique H. had exceeded the maximum number of nursing visits permitted under the

BAC Plan.

There is no evidence that Mercandante was operating under any type of conflict or acting for the interests of anyone other than the BAC Plan beneficiaries.  While Mercandante does seem to have been ill-informed about the circumstances of the claims made by Dominique H. and Paul K., the evidence makes clear that he and the other BAC Fund Trustees relied significantly upon the third-party administrators to handle claims.  Reliance upon such third-party administrators, which have significant expertise in matter such as medical billing and claims procedures, seems reasonable under the circumstances.  Accordingly, the Court finds that Mercandante acted no differently than a prudent man acting in a like capacity and familiar with such matter may have.  In the absence of any evidence showing that Mercandante was acting under a conflict of interest or in the interests of someone other than the BAC Plan beneficiaries, or that he made no effort to ensure that the claims were addressed by a designee such as Horizon, the Court finds that he did not breach his fiduciary duty.

### C.    Fraud and Unjust Enrichment

Defendants assert that Dr. Briglia intentionally submitted fraudulent claims for purposes of improperly obtaining payment from the BAC Fund.  Additionally, Defendants assert that as a result of this alleged fraud the BAC Fund made improper payments to Dr. Briglia which caused him to be unjustly enriched.  The

22

Court finds, however, that no evidence has been presented to
support such claims.  To the contrary, as set forth above, the
Court finds that Dr. Briglia's billing practices were not
precluded by the language of the BAC Plan, had some support in
industry standards for the use of CPT billing codes, and was
consistent with the past practice of the BAC Fund and its third-
party administrators, ULLICO and Horizon.[9]

### D.   Attorney's Fees and Prejudgment Interest

---

[9] After hearing all of the evidence in this case, it is
clear that Defendants' claim of "fraud" was really one of
excessive cost.  There is no doubt the plaintiff choose to bill
for his services in a way that maximized the payments to his
practice and interpreted the billing codes in the manner most
advantageous to him.  It is clear that some significant portion
of plaintiff's claim involves billing for being "available"
whether his services were actually used or not, for the cursory
review of instrument readings showing the patient's stabilized
status quo, and for oversight of the care plan whether or not
changes were made.  One might be justified in calling these
practices excessive, a sharp business practice, or even a form of
greed.  Plaintiff's demeanor at trial was one of entitlement,
best evidenced by his appearance at one point at counsel's table
in hospital scrubs.  True fraud, however, requires something more
than a determined effort to maximize profits.  Although he was at
times less than cooperative when questioned about his billing
practices, Defendants introduced no evidence that the Plaintiff
mislead anyone about the services he provided and there is no
doubt he provided specialized and skilled services to grateful
families.  Moreover, the proofs established that the overall
costs of the home care provided was far less than the same care
in a hospital.  Plaintiff is entitled to his fee.  In the end, if
the charges for the services were excessive and his billing
practices overly aggressive, the plan Defendant and its
administrators had the incentive, right, ability, and even
obligation to clarify or renegotiate the terms of his engagement.
Instead they chose the pay him, or if they failed to pay, also
failed to say why.  Defendants, through their course of conduct,
are stuck with the bargain they struck and can not leave it to
this court to fashion a better one for them.

"In any [ERISA action] by a . . . beneficiary, . . . the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1).  In determining whether to award attorneys fees, courts must consider:

> (1) the offending parties' culpability or bad faith;

> (2) the ability of the offending parties to satisfy an award of attorneys' fees;

> (3) the deterrent effect of an award of attorneys' fees against the offending parties;

> (4) the benefit conferred on members of the pension plan as a whole; and

> (5) the relative merits of the parties' position.

McPherson v. Employees' Pension Plan of Am. Re-Ins. Co., 33 F.3d 253, 254 (3d Cir. 1994) (citing Ursic v. Bethlehem Mines, 719 F.2d 670, 673 (3d Cir. 1983)).  "[T]here is no presumption that a successful plaintiff in an ERISA suit should receive an award in the absence of exceptional circumstances."  McPherson, 33 F.3d at 254 (citing Ellison v. Shenango, Inc. Pension Bd., 956 F.2d 1268, 1273 (3d Cir. 1992).

With respect to the first factor, culpable conduct in the civil context is

> commonly understood to mean conduct that us
> "blameable; censurable; . . . at fault;
> involving the breach of a legal duty or the
> commission of a fault . . . .  Such conduct
> normally involves something more than simple

24

>           negligence . . . .  [On the other hand, it]
>           implies that the act or conduct spoken of is
>           reprehensible or wrong, but not that it
>           involves malice or a guilty purpose."

McPherson, 33 F.3d at 256-57 (quoting Black's Law Dictionary (6th

ed. 1990)).  In this case, the BAC Fund's denial of the claims by

Dominique H. and Paul K. was based almost exclusively upon the

advice of Horizon, the BAC Fund's third-party administrator.  No

independent investigation into the circumstances of the claims

was conducted.  While this may have been negligent in some

respects, the Court finds that the BAC Fund's conduct did not

rise above that level.  The fact that the BAC Fund was ultimately

mistaken on the fact the claims were entitled to payment under

BAC Plan does not make the BAC Fund or Mercandante's conduct

reprehensible or wrong.  Accordingly, the Court finds that this

factor weighs against an award of attorney's fees.

     With respect to the second factor, Defendants would

undoubtedly be able to satisfy an award of attorney's fees, and

there has been no evidence presented to suggest otherwise.  With

respect to the third factor, the Court finds that an award of

attorney's fees would not have a deterrent effect upon Defendants

in this case, because the claims at issue were so unique to the

two beneficiaries, Dominique H. and Paul K. and there was no bad

faith or culpability on the part of Defendant warranting

deterrence.  With respect to the fourth factor, the Court finds

that no significant benefit has been conferred upon the

beneficiaries of the BAC Plan as a whole by this action.  As
stated above, the benefits are limited by the unique
circumstances of the particular beneficiaries at issue in this
case.  Finally, with respect to the fifth fact, although
Plaintiff ultimately succeeded on its claim for benefits under
the plan, each parties' case contained merit.  Having determined
that only one of the factors weighs in favor of an award of
attorney's fees, the Court finds that attorney's fees are not
appropriate in this case.

Plaintiff also seeks the award of prejudgment interest.
Although the award of interest is not mandatory under ERISA,
courts are afforded discretion to award prejudgment interest
where appropriate.  See Fotta v. Trs. of United Mine Workers of
Am., Health & Ret. Fund of 1974, 165 F.3d 209, 213 (3d Cir. 1998)
(finding that 29 U.S.C. § 1132(a)(3)(B) allows a beneficiary to
sue for "other appropriate equitable relief," including
prejudgment interest).  The Court finds that prejudgment interest
is appropriate in this case, given the long period of time that
elapsed between Dominique H. and Paul K.'s claims and the
judgment rendered.  Id. ("We now make explicit that interest is
presumptively appropriate when ERISA benefits have been
delayed.")  The question thus becomes the interest rate to be
used.  The Court leaves this question if left for another day.
Plaintiff is granted leave to file an appropriate motion for the

amount of prejudgment interest within twenty (20) days of the entry of this Opinion.

## IV.  CONCLUSION

For the foregoing reasons, the Court finds that the BAC Fund improperly denied payments under the BAC Plan to Dr. Briglia in the amount of $670,539.58 for his treatment of Dominique H. and Paul K.  The Court also finds that Mercandante did not breach his fiduciary duty as Administrator of the BAC Fund.  Additionally, the Court finds that Dr. Briglia did not engage in a fraudulent billing and was not unjustly enriched by the payments made by the BAC Fund.  Finally, the Court finds that Plaintiff is not entitled to an award of attorney's fees, although an award of prejudgment interest is warranted.  An Order consistent with this Opinion will be entered.


Dated: October 21, 2010        s/ Noel L. Hillman
                               HON. NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey

27